1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MARGARET MEEHAN,                    )   NO. SACV 11-01310 (SS)
                                        )
12              Plaintiff,              )
                                        )
13         v.                           )   **MEMORANDUM DECISION AND ORDER**
                                        )
14  MICHAEL J. ASTRUE,                  )
    Commissioner of the Social         )
15  Security Administration,           )
                                        )
16              Defendant.              )
    _____)

17

18                                  **I.**

19                             **INTRODUCTION**

20

21      Margaret Meehan ("Plaintiff") brings this action seeking to reverse

22  the decision of the Commissioner of the Social Security Administration

23  (the "Commissioner" or the "Agency") denying her application for

24  Disability Insurance Benefits ("DIB") and Supplemental Security Income

25  ("SSI") benefits.  The parties consented, pursuant to 28 U.S.C. §

26  636(c), to the jurisdiction of the undersigned United States Magistrate

27  Judge.  For the reasons stated below, the decision of the Agency is

28  REVERSED and REMANDED for further proceedings.

1
2                                   **II.**
3                          **PROCEDURAL HISTORY**
4
5        Asserting that she became disabled on June 1, 2007, Plaintiff filed
6   an application for Title II DIB on October 3, 2008 and an application
7   for Title XVI SSI on November 4, 2008. (Administrative Record ("AR")
8   139-144).  The Agency denied Plaintiff's initial applications on March
9   3, 2009 and on reconsideration on August 6, 2009.  (AR 69, 79).
10  Plaintiff then requested a hearing, which was held before Administrative
11  Law Judge Helen E. Heese (the "ALJ") on November 15, 2010. (AR 16).
12  Plaintiff appeared with counsel and testified at the hearing. (AR 41).
13  A vocational expert and a non-examining medical expert also testified
14  at the hearing. (AR 58-60, 49-52).  On December 3, 2010, the ALJ issued
15  a decision denying benefits.  (AR 13-24).  Plaintiff sought review
16  before the Appeals Council, (AR 11), which denied Plaintiff's request
17  on July 25, 2011. (AR 1-3). On September 2, 2011, Plaintiff filed the
18  instant action.
19
20                                   **III.**
21              **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**
22
23       To qualify for disability benefits, a claimant must demonstrate a
24  medically determinable physical or mental impairment that not only
25  prevents engagement in substantial gainful activity, defined by 20
26  C.F.R. § 416.910 as for-profit work involving significant and productive
27  physical or mental duties, but that is expected to either last for a
28  continuous period of at least twelve months or result in death.  See

                                     2

Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)); see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)) (noting that the impairment must render the claimant incapable of performing his previously performed work or "any other substantial gainful employment that exists in the national economy."). Unless those two requirements are met, a claimant is not disabled within the meaning of the Social Security Act. Tackett, 180 F.3d at 1098.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

3

1  *Tackett*, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
2  949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

3

4      The claimant has the burden of proof at steps one through four, and
5  the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262
6  F.3d at 953-54. If, at step four, the claimant meets his burden of
7  establishing an inability to perform the past work, the Commissioner
8  must show that the claimant can perform some other work that exists in
9  "significant numbers" in the national economy, taking into account the
10 claimant's residual functional capacity ("RFC"),[1] age, education and
11 work experience. <u>Tackett</u>, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).
12 The Commissioner may do so by the testimony of a vocational expert or
13 by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.
14 Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
15 <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a
16 claimant has both exertional (strength-related) and nonexertional
17 limitations, the Grids are inapplicable and the ALJ must take the
18 testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869
19 (9th Cir. 2000).

20

21                            **IV.**

22                    **THE ALJ'S DECISION**

23

24     The ALJ employed the five-step sequential evaluation process and
25 concluded, at step one, that Plaintiff had not engaged in substantial
26 gainful employment since June 1, 2007. (AR 18). At step two, the ALJ

27 ───────────────
       [1] Residual functional capacity is "the most [one] can still do
28 despite [his] limitations" and represents an assessment "based on all
   the relevant evidence." 20 C.F.R. § 416.945(a).

                            4

found that Plaintiff had severe impairments of fibromyalgia and degenerative disc disease of the lumbar spine. (Id.). The ALJ explained that Plaintiff's conditions of fibromyaldia and degenerative disc disease "have caused [Plaintiff] more than minimal limitations in her ability to perform work related activity and are therefore severe as defined by Social Security Regulations." (Id.). The ALJ determined that Plaintiff's "mental impairment of depression . . . does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." (Id.).

At step three, the ALJ found that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 20). At step four, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she must be able to change positions briefly throughout the day, for 1-3 minutes per hour." (AR 20). The ALJ found that Plaintiff is capable of performing her past relevant work as a loan officer. (AR 24). The ALJ reasoned that Plaintiff had the RFC to perform light work with restrictions and that Plaintiff's past work as a loan officer "does not require the performance of work-related activities precluded by the claimant's [RFC]." Accordingly, the ALJ did not proceed to step five and instead found that Plaintiff was not under a disability within the meaning of the Social Security Act. (AR 16, 24).

\\
\\
\\

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VI.**

**DISCUSSION**

Plaintiff contends that the ALJ erred for two reasons: (1) the ALJ did not provide specific and convincing reasons for rejecting Plaintiff's credibility and subjective complaints, (Memorandum in

6

1  Support of Plaintiff's Complaint ("Complaint Memo.") at 6); and (2) the
2  ALJ failed to give specific and legitimate reasons for rejecting the
3  opinion of Plaintiff's treating physician.  (Id.).

5        The Court agrees with Plaintiff's two grounds for remand.  For the
6  reasons discussed below, the Court finds that the ALJ's decision should
7  be reversed and this action remanded for further proceedings.

9  **A.    The ALJ Failed To Provide Clear And Convincing Reasons For**
10        **Rejecting Plaintiff's Subjective Complaints**

12        Plaintiff's first claim is that the ALJ erred by failing to
13  articulate clear and convincing reasons for rejecting her subjective
14  complaints.  (Complaint Memo. at 6).  Specifically, Plaintiff contends
15  that the ALJ erred in demanding objective evidence regarding Plaintiff's
16  subjective symptoms of pain and fatigue arising from fibromyalgia.
17  (Complaint Memo. at 8).  Plaintiff argues that the ALJ improperly
18  discounted the treating physician's evaluation of Plaintiff because it
19  was "based largely on Plaintiff's subjective complaints." (Plaintiff's
20  Reply to Memorandum in Support of Defendant's Answer ("Reply") at 3).
21  For the reasons discussed below, the Court agrees with Plaintiff's
22  contentions.

24        The Court notes that an ALJ may reject a plaintiff's testimony upon
25  an explicit credibility finding that is "supported by a specific, cogent
26  reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th
27  Cir. 1990) (internal citations omitted).  Unless there is affirmative
28  evidence showing that the plaintiff is malingering, the ALJ's reasons

7

1  for rejecting the plaintiff's testimony must be "clear and convincing."
2  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

3

4      The record provides no affirmative evidence showing that Plaintiff
5  was malingering. Instead, the record suggests that Plaintiff was
6  truthful. Dr. Sami Nafoosi, a non-examining medical expert, testified
7  before the ALJ that he found no indication, based on either Plaintiff's
8  testimony or medical records, that Plaintiff was a malingerer. (AR 57).
9  Similarly, the State's examining psychiatrist, Dr. Romualdo Rodriguez,
10 concluded that Plaintiff appeared genuine and truthful during
11 examination. (AR 343-44). Given the absence of affirmative evidence
12 that Plaintiff was malingering, the ALJ was required to provide clear
13 and convincing reasons for rejecting Plaintiff's testimony. No such
14 reasons were provided.

15

16     The ALJ explained that objective medical evidence did not support
17 Plaintiff's allegations of work-related limitations. (AR 22). The ALJ
18 reached this conclusion by relying on examinations performed by the
19 State's examining physician, Dr. Payam Moazzaz, and Plaintiff's
20 rheumatologist, Dr. Javid Ahmed. (AR 21-22). Upon examining Plaintiff,
21 Dr. Moazzaz concluded that she had a normal gait and full, pain-free
22 range of motion in the neck, elbow, forearm, wrists, fingers, knees,
23 ankles, and feet. (AR 276-77). Dr. Moazzaz further concluded that
24 Plaintiff could not only lift and carry 50 pounds occasionally and 25
25 pounds frequently but also sit, stand and walk six hours out of an eight
26 hour workday. (AR 279). Dr. Ahmed's examination similarly revealed
27 that Plaintiff had "normal range of motion of all joints [and] no
28 synovitis or effusion [on all joints]." (AR 22, 327).

These findings, however, are not inconsistent with Plaintiff's complaint of fibromyalgia and do not amount to a clear and convincing reason for rejecting Plaintiff's substantive pain complaints.  The Ninth Circuit has recognized that objective findings "do not establish the presence or absence of fibromyalgia."  Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004) (overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)).  As stated in Jordan:

> [F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.

Id.; see also Green-Young v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2003) (explaining that physical examinations for fibrositis patients will usually yield normal results-a full range of motion, no joint swelling, normal muscle strength and neurological reactions).

Here, Plaintiff provides ample evidence that she suffers from fibromyalgia.  Dr. Ahmed diagnosed Plaintiff with fibromyalgia associated with irritable bowel syndrome, hypothyroidism, osteoarthritis of the first CMC joint and depression.  (AR 327-28).  He explained that Plaintiff had "multiple tissue tender and trigger points and tenderness in the right first CMC joint", (Id.), and concluded that Plaintiff's condition satisfied the American College of Rheumatology criteria for fibromyalgia.  (AR 308).  Further, Plaintiff's complaint of disabling

9

pain, extreme fatigue and disturbed sleep are consistent with the symptoms of fibromyalgia. <u>See</u> <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996) (observing that the principle symptoms of fibromyalgia are "pain all over," fatigue, disturbed sleep, and multiple tender spots). Nearly two years of medical records obtained from Plaintiff's treating physician, Dr. Daniel Strub, show that Plaintiff suffered from persistent joint pain and fatigue. (AR 329, 378, 381, 384, 389, 399, 402, 407).

The Ninth Circuit has recognized that objective findings are not dispositive with respect to whether a person does or does not suffer from fibroyalgia. <u>Jordan</u>, 370 F.3d at 872 (9th Cir. 2004). Thus, the ALJ erred in rejecting Plaintiff's subjective symptoms as inconsistent with the objective medical evidence. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991).

Further, because Plaintiff's subjective statements of depression were consistent with her medical records, the ALJ erred in rejecting Plaintiff's assertion that she suffered from depression. The ALJ reasoned that Plaintiff "did not allege any depression symptoms in her application of benefits, only recently sought formal treatment for this disorder, and [provided] no indication that her symptoms . . . will persist for one year." (AR 22). Although Plaintiff did not mention any depression symptoms in her initial application, the disability report filed with Plaintiff's appeal lists depression as one reason for seeking treatment from Dr. Strub. (AR 185-86). Moreover, Dr. Strub consistently noted that Plaintiff's symptoms were consistent with

10

depression.   (AR 22, 282, 329, 364, 367, 370, 375, 378, 381, 384, 389, 399, 402, 407).   On several occasions, Dr. Strub noted that Plaintiff's depression was progressing and referred Plaintiff to a psychiatrist, (AR 387, 404), who noted that Plaintiff presented with "at least a 3 year history of mood swings and depression, exacerbated by difficulty with fibromyalgia." (AR 410). That psychiatrist, Dr. Samuel Dey, further noted that Plaintiff had at least a three-year history of depression and had been taking Celexa, an antidepressant, for eight years.   (AR 410). Dr. Dey advised Plaintiff continue taking Celexa and consider psychotherapy.   (AR 410-11).   The ALJ failed to provide a clear and convincing basis for rejecting Plaintiff's testimony that she was depressed.

The ALJ also failed to offer a clear and convincing basis for denying Plaintiff's claim that daily headaches contributed to her alleged disability.   Although Dr. Strub's treatment notes report "no history of headaches", (AR 22, 282, 329, 364, 367, 370, 375, 378, 381, 384, 389, 399, 402, 407), Dr. Ahmed's notes indicate that Plaintiff suffered from "headaches once or twice a week." (AR 326).   This single inconsistency is not a sufficiently clear and convincing reason to reject Plaintiff's claim.

The ALJ failed to provide clear and convincing reasons, supported by the record, to reject Plaintiff's testimony.   Accordingly, remand is required and full credit must be given to Plaintiff's testimony.

\\

\\

11

1   **B.     The ALJ Failed To Provide Specific And Legitimate Reason To Reject**
2          **The Treating Physician's Opinions**

3

4          Plaintiff's second claim is that the ALJ failed to properly
5   consider the opinions of her treating physician, Dr. Strub. (Complaint
6   Memo. at 10).   Specifically, Plaintiff argues that the ALJ improperly
7   relied on the opinions of "one-time examining physicians hired by the
8   Social Security Administration," namely, Dr. Moazzaz, D. Rodriguez, and
9   Dr. Nafoosi.  (Id.).   Plaintiff also argues that the ALJ improperly
10  disregarded Dr. Strub's opinion regarding her physical and mental
11  limitations. (Id.).   The Court agrees.

12

13         The opinions of treating physicians are entitled to special weight
14  because the treating physician is hired to cure and has a better
15  opportunity to know and observe the claimant as an individual.
16  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).   Where a
17  treating physician's opinion is not contradicted by another doctor, it
18  may be rejected only for "clear and convincing" reasons.   Lester, 81
19  F.3d at 830.   Further, even where a treating physician's opinion is
20  contradicted by another doctor, an ALJ may not reject the treating
21  physician's opinion without providing specific, legitimate reasons,
22  supported by substantial evidence in the record.   Id.

23

24         Here,  because Dr. Strub's opinions are arguably contradicted by
25  other doctors, the ALJ must provide "specific and legitimate reasons"
26  to reject Dr. Strub's opinions.  See Lester, 81 F.3d at 830.   The ALJ
27  found that Dr. Strub's diagnosis was inconsistent with those of Dr.

28

Ahmed, Dr. Moazzaz and Dr. Nafoosi. (AR 23). However, at least as to Dr. Ahmed's findings, there was no substantive inconsistency. Dr. Strub referred Plaintiff to Dr. Ahmed for possible "early lupus or a collagen connective tissue disease." (AR 326). Dr. Ahmed ruled out "systemic lupus erythematosus at this time" and diagnosed Plaintiff with fibromyalgia, associated with irritable bowel syndrome, hypothyroidism, osteoarthritis of the first CMC joint and depression. (AR 327). In subsequent examinations, Dr. Strub consistently stated that Plaintiff presented with fibromyalgia, irritable bowel syndrome, hypothyroidism and depression. (AR 330, 379, 382, 385, 387, 390, 400, 403, 408). Dr. Ahmed's diagnosis does not conflict with Dr. Strub's assessment of Plaintiff's physical RFC.

The ALJ was correct that Dr. Strub's conclusions about Plaintiff's work-related limitations differ from those of Dr. Moazzaz and Dr. Nafoosi, but the ALJ erred in failing to provide specific and legitimate reasons to reject Dr. Strub's conclusions in favor of those of Dr. Moazzaz and Dr. Nafoosi. Based on examinations of Plaintiff, Dr. Strub determined that pain and fatigue would prevent her from maintaining continuous employment in any job. (AR 324). Dr. Strub explained that Plaintiff could sit, stand or walk for no more than two hours in a eight-hour day. (AR 325). In contrast, Dr. Moazzaz concluded that Plaintiff could sit, stand and walk six hours out of an eight hour workday. (Id.). Dr. Nafoosi also concluded that Plaintiff could sit for eight hours of an eight-hour day and stand and walk for six hours of an eight-hour day. (AR 51).

1    The Court notes, however, that Dr. Strub treated Plaintiff for two
2    years, while Dr. Moazzaz conducted a single examination of Plaintiff and
3    Dr. Nafoosi did not examine Plaintiff at all.  As Plaintiff's treating
4    physician, Dr. Strub is presumed to be in a better position to assess
5    Plaintiff's functional limitations.  See Magallanes, 881 F.2d at 751.
6    In order to overcome this presumption, the ALJ must provide specific and
7    legitimate reasons to adopt Dr. Moazzaz and Dr. Nafoosi's opinions over
8    Dr. Strub's opinion.  Lester, 81 F.3d at 830.

9

10   Here, the ALJ did not provide a sufficiently specific or legitimate
11   reason for her rejection of Dr. Strub's medical opinions.  The ALJ found
12   that "Dr. Strub's opinion on limitations appears to be based entirely
13   on the claimant's subjective complaints and are unsupported by
14   radiological studies or laboratory reports."  (AR 23).  However, a
15   treating physician's diagnoses should not be discounted merely because
16   they are based on the patient-plaintiff's subjective complaints.  See
17   Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999).
18   Further, the ALJ erred in demanding objective evidence such as
19   "radiological studies or laboratory reports" to demonstrate the severity
20   of fibromyalgia.  (See AR 23).  As noted above, courts have recognized
21   that fibromyalgia is a disabling impairment that lacks objective tests
22   to conclusively confirm the disease.  See e.g., Benecke v. Barnhart, 379
23   F.3d 587, 594 (9th Cir. 2004) (holding that the ALJ erred by requiring
24   objective evidence for a disease that eludes such measurement); Green-
25   Young, 335 F.3d at 108.  Accordingly, the absence of objective findings
26   is not a legitimate ground to reject Dr. Strub's opinions.

27

28

14

The ALJ also erred in discounting Dr. Strub's medical opinions merely because his treatment notes allegedly failed to either indicate that Plaintiff had complained of disabling pain or was referred to a pain management specialist. (AR 23). This reason is contradicted aby the record. Dr. Strub's treatment notes recorded Plaintiff's complaints of severe joint pain throughout the treatment period. (AR 282-86, 329-30, 364-65, 367-68, 370-71, 375-76, 378-79, 381-82, 384-85, 389-90, 399-400, 402-03, 407-08). Moreover, although Dr. Strub did not refer Plaintiff to a pain management specialist, Dr. Strub prescribed Plaintiff pain medication including Tramadol, Norco and Vicodin. (AR 330, 379, 382, 385, 387, 390, 400, 403, 408). Dr. Strub's failure to refer Plaintiff to a pain management specialist was not a specific and legitimate reason to reject his opinions.

In sum, because the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinions, the case must be remanded. Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

Here, if the treating physician's opinions as well as Plaintiff's testimony are fully credited, Plaintiff must be found disabled. But there is an outstanding issue of whether Plaintiff was disabled as early as June 1, 2007. As Dr. Nafoosi pointed out at the hearing, although Plaintiff alleged disability beginning from June 1, 2007, Plaintiff did not seek treatment from Dr. Strub until November or December of 2008. (AR 52, 160, 296). Dr. Nafoosi noted that there was no "medically

determinable severe condition" prior to January 1, 2009.  (AR 52).  Thus
remand to the agency for additional investigation or explanation, to
determine when Plaintiff's disability began, is more appropriate in this
case.

## VII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be
entered REVERSING the decision of the Commissioner and REMANDING this
matter for further proceedings consistent with this decision.  IT IS
FURTHER ORDERED that the Clerk of the Court serve copies of this
Order and the Judgment on counsel for both parties.

DATED: August 30, 2012


                              _____/S/_____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE